NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0320n.06

No. 25-1600

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 21, 2026
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| DARNELL DONTE RISPER, | ) | DISTRICT OF MICHIGAN |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: CLAY, MURPHY, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Michigan police stopped Darnell Donte Risper for violating traffic laws. During the stop, one officer saw a handgun on the floor of Risper's car. The officers arrested Risper, who was charged with being a felon in possession of a firearm. Risper moved to suppress the handgun, and the district court denied his motion. We affirm.

Late at night, Michigan police pulled over Risper for having a supposedly faulty muffler and failing to make a proper turn signal. The police asked him to step outside of his vehicle, and he complied, standing just outside the driver's seat between the open door and the car's body. He also consented to a pat-down, which an officer quickly performed as Risper exited his vehicle. As one officer asked Risper where he was going and explained the reason for the stop, a second officer shined his flashlight through Risper's car windows and looked around.

Gesturing toward the rear of the car, the officer asked Risper to "slide that way," i.e., move away from his front seat. Golden Bodycam, R. 41-1, 01:18. Risper refused to comply, instead

asking if he could close his car door and explaining that he was "not consenting" to any search of his vehicle. *Id.* at 01:34. The officer responded "yeah" to Risper's request to close the car door but gestured that Risper would first need to step aside. *Id.* at 01:25. During this exchange, the second officer spotted a handgun on the floor underneath the driver's seat. This officer immediately handcuffed Risper, and the officers recovered a gun and ammunition from the vehicle. The entire encounter up to this point lasted roughly 75 seconds.

A grand jury indicted Risper for possessing a firearm and ammunition as a felon. *See* 18 U.S.C. § 922(g)(1). He moved to suppress the firearm and ammunition, and the district court denied his motion. Risper pleaded guilty to the charges but retained his right to appeal his conviction based on his denied motion to suppress. He timely exercised that right.

When reviewing the denial of a motion to suppress, we review legal conclusions de novo and factual determinations for clear error. *United States v. Whiteside*, 141 F.4th 734, 741 (6th Cir. 2025). In doing so, "we consider the evidence in the light most favorable to the government." *Id.* (quoting *United States v. Taylor*, 121 F.4th 590, 594 (6th Cir. 2024)).

A traffic stop is lawful if the police have probable cause to believe the driver committed a traffic violation. *United States v. Watson*, 142 F.4th 872, 877–78 (6th Cir. 2025). Once a traffic stop has commenced, the police may lawfully order the driver to exit his vehicle. *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (per curiam). And officers may seize "a weapon in plain view . . . at least temporarily . . . if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety." *United States v. Bishop*, 338 F.3d 623, 628 (6th Cir. 2003). These principles justify the initial stop (which Risper does not contest), the request for Risper to exit his vehicle, and the seizure of the handgun in plain view. Nevertheless, Risper argues that the officers unconstitutionally prolonged the stop

and violated his Fourth Amendment rights by preventing him from closing his car door. We find neither argument persuasive.

Risper first contends that the officers unnecessarily and unlawfully prolonged his detention after the pat-down by continuing to detain him and inquiring why he wanted to close his door. A traffic stop may not extend longer than necessary to achieve its purpose unless officers develop reasonable suspicion of criminal activity or danger to others. *United States v. Santos*, 161 F.4th 1007, 1011 (6th Cir. 2025). The brief nature of the stop does not inform our inquiry, as even a "de minimis" extension is not acceptable under the Fourth Amendment. *United States v. Whitley*, 34 F.4th 522, 529 (6th Cir. 2022). Instead, we look to "what the police in fact d[id]." *Rodriguez v. United States*, 575 U.S. 348, 357 (2015).

Here, the officers did not prolong the traffic stop beyond its lawful purpose. They took Risper's license, asked him where he was going, and asked him to step out of his vehicle and for consent to pat him down—all permissible requests. *See Santos*, 161 F.4th at 1011. The officer's request for him to step away from his door was permissible too, because this request promoted the same safety concerns which allowed the officer to ask him to exit the vehicle in the first place. *See Mimms*, 434 U.S. at 110–11. And requiring Risper to "stand[] alongside" his car rather than stand directly in front of his seat "hardly rises to the level of [even] a petty indignity." *Id.* at 111 (citation modified). The only question which arguably exceeded the scope of the stop's purpose was, "why do you want to close your door so bad?" Golden Bodycam, R. 51-1, 01:29. But the officer asked this question while waiting for Risper to comply with his lawful instruction. So this singular question did not "prolong[] the stop" and thus did not violate the Fourth Amendment. *Rodriguez*, 575 U.S. at 355.

Risper next claims that the officers violated the Fourth Amendment by preventing him from closing his car door after stepping out of the vehicle. The officer's bodycam footage undermines this assertion, however. Throughout the stop, Risper remained directly between his driver's side door and the body of the car. He remained there even after the officer asked him to move to the side and indicated that Risper could close the door after he did so. By refusing to move, as the district court reasonably found, Risper "prevented anyone from closing the door, including himself." D. Ct. Op., R. 51, PageID 125. And a second officer saw the gun while the first officer asked Risper to move. Since the firearm was in plain view, the officers' seizure of it was lawful. *See Bishop*, 338 F.3d at 628.

In sum, nothing the officers did during their stop of Risper prolonged or exceeded the scope of an ordinary traffic stop, and therefore the district court did not err in refusing to suppress evidence seized in plain view during that stop.

We affirm the district court's denial of Risper's motion to suppress.